AB:KCB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM USERNAME "SLYFOXRY" THAT IS STORED AT PREMISES CONTROLLED BY INSTAGRAM, LLC | **TO BE FILED UNDER SEAL**<br><br>**APPLICATION FOR A SEARCH WARRANT FOR INFORMATION IN POSSESSION OF A PROVIDER (INSTAGRAM ACCOUNT)**<br><br>Case No. 19-M-101 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, TED D. WENDLING, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram username "slyfoxry" (the "Subject Account") that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC ("Instagram"), a social networking company owned by Facebook, Inc. and headquartered in San Francisco, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Instagram to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the username.

2.      I am a federal Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Joint Firearms Task Force ("JFTF"), and have been for approximately three years. I have investigated numerous cases involving gun trafficking, and, among other

things, have conducted or participated in surveillance, the execution of search warrants and debriefings of informants, and have participated in investigations that included the interception of wire and electronic communications. I have gained experience in this area through classroom training and daily work conducting these types of investigations. As a result of my training and experience, I am familiar with the techniques and methods used by individuals involved in criminal activity and, specifically, gun trafficking, to conceal their activities from detection by law enforcement authorities.

3.      The facts in this affidavit come from my personal observations, my training and experience and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      As described in further detail below, and based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(a)(1)(A), among other possible violations of law, have been committed by an individual believed to be RYSEAN BROWN (the "SUBJECT INDIVIDUAL"). There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.      Between approximately 2014 and 2019, ATF agents and task force officers from JFTF have worked with an undercover officer ("UC"). The UC has previously provided information regarding gun trafficking to JFTF agents and task force officers. This information

has been corroborated by surveillance and other investigative means employed by JFTF, and has been found to be reliable.

6.     On December 6, 2018, members of JFTF gave the UC $850.00 of pre-recorded United States currency to purchase a firearm from the SUBJECT INDIVIDUAL. The UC drove, in a New York City Police Department ("NYPD") vehicle ("Vehicle-1") equipped with electronic surveillance equipment, to meet the SUBJECT INDIVIDUAL at a laundromat in the vicinity of the East Flatbush section of Brooklyn, New York (the "Laundromat"). JFTF members had previously set up surveillance at the Laundromat. Upon the UC's arrival, the SUBJECT INDIVIDUAL was observed approaching Vehicle-1 wearing a plaid purple poncho. The SUBJECT INDIVIDUAL entered the rear passenger side of the UC's vehicle and instructed the UC to drive around the corner to the vicinity of Cortelyou Road and East 37th Street, in Brooklyn, New York, to conduct the transaction. The SUBJECT INDIVIDUAL handed the UC a Browning Arms Co., Model Black Label 1911-380, .380 caliber handgun (Serial No. 51HZT08382) ("Firearm-1"), with one magazine. The UC provided the SUBJECT INDIVIDUAL with the $850.00 of pre-recorded United States currency. Video and audio surveillance captured the December 6, 2018 transaction between the UC and the SUBJECT INDIVIDUAL.

7.     During the December 6, 2018 transaction, the SUBJECT INDIVIDUAL provided the UC with his cellular telephone number. Also during the December 6, 2018 transaction, the SUBJECT INDIVIDUAL showed the UC a photograph on the SUBJECT INDIVIDUAL's cellular telephone depicting a firearm with a pink grip. The SUBJECT INDIVIDUAL and the UC discussed the UC's possible purchase of the firearm depicted on the SUBJECT INDIVIDUAL's cellular telephone.

8.      The UC subsequently provided JFTF members with Firearm-1 and the magazine obtained in the December 6, 2018 transaction.  ATF records indicate that Firearm-1 was reported stolen on August 17, 2017.

9.      On December 17, 2018, the UC informed JFTF members that the SUBJECT INDIVIDUAL had called the UC and informed the UC that the SUBJECT INDIVIDUAL had a .40 caliber firearm for sale for $800.00.  On December 18, 2018, JFTF members gave the UC $800.00 of pre-recorded United States currency to purchase the firearm from the SUBJECT INDIVIDUAL.  The UC drove Vehicle-1 to meet the SUBJECT INDIVIDUAL at the Laundromat.  JFTF members had previously set up surveillance at the Laundromat.  The UC called the SUBJECT INDIVIDUAL on the UC's cellular telephone to inform the UC that the SUBJECT INDIVIDUAL had arrived.  Shortly thereafter, the SUBJECT INDIVIDUAL was observed approaching Vehicle-1, again wearing a plaid purple poncho.  The SUBJECT INDIVIDUAL entered the front passenger side of Vehicle-1 and instructed the UC to drive to the vicinity of Brooklyn Avenue and Clarendon Road, in Brooklyn, New York, to conduct the transaction.  The SUBJECT INDIVIDUAL handed the UC a Ruger, Model SR40C, .40 caliber handgun (Serial No. 345-13134) ("Firearm-2"), with one magazine.  The UC provided the SUBJECT INDIVIDUAL with the $800.00 of pre-recorded United States currency.  Video and audio surveillance captured the December 18, 2018 transaction between the UC and the SUBJECT INDIVIDUAL.

10.     The UC subsequently provided JFTF members with Firearm-2 and the magazine obtained in the December 18, 2018 transaction.  No ATF records were identified regarding Firearm-2.

11. On January 2, 2019, the UC informed JFTF members that the SUBJECT INDIVIDUAL had called the UC and informed the UC that the SUBJECT INDIVIDUAL had a firearm for sale for $500.00. On January 3, 2019, JFTF members gave the UC $500.00 of pre-recorded United States currency to purchase the firearm from the SUBJECT INDIVIDUAL. The UC drove Vehicle-1 to meet the SUBJECT INDIVIDUAL at the Laundromat. JFTF members had previously set up surveillance at this location. The UC called the SUBJECT INDIVIDUAL on the UC's cellular telephone to inform the SUBJECT INDIVIDUAL that he had arrived. Shortly thereafter, the SUBJECT INDIVIDUAL was observed exiting 3613 Avenue D, Brooklyn, New York, and approaching Vehicle-1, again wearing a plaid purple poncho. The SUBJECT INDIVIDUAL entered the front passenger side of Vehicle-1 and instructed the UC to drive to the vicinity of Brooklyn Avenue and Clarendon Road, in Brooklyn, New York, to conduct the transaction. The SUBJECT INDIVIDUAL handed the UC a Jiminez Arms, Model J.A. 25, .25 caliber handgun (Serial No. 276874) ("Firearm-3"), with a pink grip, one magazine and three rounds of Aguila .25 caliber ammunition. Upon information and belief, Firearm-3 is the firearm depicted in the photograph the SUBJECT INDIVIDUAL showed the UC on his cellular telephone on December 6, 2018. The UC provided the SUBJECT INDIVIDUAL with the $500.00 of pre-recorded United States currency. Video and audio surveillance captured the January 3, 2019 transaction between the UC and the SUBJECT INDIVIDUAL.

12. The UC subsequently provided JFTF members with Firearm-3, the magazine and ammunition obtained in the January 3, 2019 transaction. ATF records indicate that Firearm-3 was reported stolen on March 5, 2015, from a location in Pennsylvania.

13. On January 7, 2019, the UC informed JFTF members that the SUBJECT INDIVIDUAL had called the UC and informed the UC that the SUBJECT INDIVIDUAL had a

firearm and ballistic vest for sale for $750.00. On January 8, 2019, JFTF members gave the UC $750.00 of pre-recorded United States currency to purchase the firearm and ballistic vest from the SUBJECT INDIVIDUAL. The UC drove Vehicle-1 to meet the SUBJECT INDIVIDUAL at the Laundromat. JFTF members had previously set up surveillance at this location. The UC called the SUBJECT INDIVIDUAL on his cellular telephone to inform him that he had arrived. Shortly thereafter, the SUBJECT INDIVIDUAL was observed entering the front passenger side of Vehicle-1, again wearing a plaid purple poncho. The SUBJECT INDIVIDUAL and the UC drove to the vicinity of Brooklyn Avenue and Clarendon Road, in Brooklyn, New York, to conduct the transaction. The SUBJECT INDIVIDUAL handed the UC (1) one Iver Johnson Double Action, Model 1900, .38 caliber handgun (Serial No. 20307) ("Firearm-4"); (2) one green and yellow Remington box containing fifty rounds of Remington .38 Short Colt caliber ammunition; and (3) one black Safe Life Defense body armor ballistic vest, Model SLD-MTC. The UC provided the SUBJECT INDIVIDUAL with the $750.00 of pre-recorded United States currency. Video and audio surveillance captured the January 8, 2019 transaction between the UC and the SUBJECT INDIVIDUAL.

14.     The UC subsequently provided JFTF members with Firearm-4 and the ammunition and ballistic vest obtained in the January 8, 2019 transaction. No ATF records were identified regarding Firearm-4.

15.     JFTF members have reviewed public and ATF records and confirmed that the SUBJECT INDIVIDUAL is not licensed to deal in, manufacture or import firearms.

16.     Based on my training and experience, the retail value of Firearm-1, Firearm-2, Firearm-3 and Firearm-4 is significantly lower than the purchase price quoted by the SUBJECT INDIVIDUAL.

17.     In or about December 2018, JFTF members obtained social media information regarding the SUBJECT INDIVIDUAL from the NYPD Social Media Analysis & Research Team.  Based on the information provided, JFTF members have identified the SUBJECT ACCOUNT, which is public, as belonging to the SUBJECT INDIVIDUAL.  Upon my review of the SUBJECT ACCOUNT, and based on my in-person surveillance of the SUBJECT INDIVIDUAL and my review of videos of the SUBJECT INDIVIDUAL, I have identified numerous photographs of the SUBJECT INDIVIDUAL depicted in the SUBJECT ACCOUNT. Further, law enforcement have reviewed a Twitter account in which the account username is "slyfoxry," the same username as that associated with the SUBJECT ACCOUNT, and which lists the name "Rysean Brown."  Based on my review of the SUBJECT ACCOUNT, I believe that the SUBJECT ACCOUNT is controlled by the SUBJECT INDIVIDUAL.

18.     Notably, there are several photographs of the SUBJECT INDIVIDUAL in the SUBJECT ACCOUNT in which the SUBJECT INDIVIDUAL is wearing the plaid purple poncho, which is distinctive.  Upon information and belief, the plaid purple poncho depicted in the photographs in the SUBJECT ACCOUNT is the same plaid purple poncho worn by the SUBJECT INDIVIDUAL in the purchases of Firearm-1, Firearm-2, Firearm-3 and Firearm-4. The most recent photograph of the SUBJECT INDIVIDUAL wearing the plaid purple poncho was posted on or about January 29, 2019.  The SUBJECT ACCOUNT additionally contains videos dated October 5, 2017 and November 3, 2017, in which the SUBJECT INDIVIDUAL is seen discharging firearms in unknown locations.

19.     Based on my training and experience, including my participation in this investigation, my review of the SUBJECT ACCOUNT and the information contained in this

affidavit, I believe that photographs, postings and communications contained on the SUBJECT ACCOUNT would constitute direct evidence and fruits of the SUBJECT OFFENSE.

20.     Accordingly, based on the information described above, there is probable cause to conclude that the SUBJECT ACCOUNT contains evidence, such as photographs and communications, related to violations of the SUBJECT OFFENSES.

## TECHNICAL BACKGROUND

21.     Instagram is a free-access social networking website that can be accessed at http://www.instagram.com. Instagram allows its users to establish accounts. Instagram was developed and operated by a company of the same name, and was acquired by Facebook. Users can also log into Instagram using an existing Facebook account. Users can then use their accounts to share photographs with other Instagram users, and sometimes with the general public. Users can also attach captions (brief textual descriptions) of photographs that are shared along with the photographs.

22.     Instagram asks users to provide basic contact and personal identifying information to Instagram, either during the registration process or thereafter. This information may include the user's full name, gender, contact email addresses, Instagram password, telephone numbers, a personal biography, websites, an account photograph, and other personal identifiers.

23.     Instagram users can choose to "follow" other Instagram users. In most cases, any photographs posted by an Instagram user are instantly visible to all of their "followers." Followers can also comment on other users' photographs, and "like" other users' photographs. This "like" feature allows users to give positive feedback on particular

photographs. Instagram users also have the ability to "tag" (i.e., label) other Instagram users in a photograph or video.

24.     Instagram users can choose to make their profiles "private," in which case they must approve other users' requests to "follow" them. If a user's profile is not "private," any other user may follow them – and see their posted photographs – without their knowledge or approval.

25.     Photographs on Instagram may contain "metadata," which is technical data embedded into the photographs themselves by users before uploading them to Instagram. Users may choose to attach additional Metadata to photographs after they have been uploaded to Instagram. Metadata can include, but is not limited to, the time at which a photograph was taken, the device that was used to take the photograph, and the latitude and longitude at which the photograph was taken.

26.     Instagram also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Instagram, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views an Instagram profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

27.     Instagram also retains logs of the device identifiers or any mobile device that a user uses to connect to Instagram. These identifiers uniquely identify each mobile device. These logs may contain information about the actions taken by the user ID or device identifier on Instagram, including information about the type of action, the date and time of the action, and the user ID and device identifier associated with the action. For example, if a

user views an Instagram profile, that user's device identifier log would reflect the fact that the user viewed the profile, and would show when and from what device identifier the user did so.

28.     Social networking providers like Instagram typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Instagram users may communicate directly with Instagram about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Instagram typically retain records about such communications, including records of contracts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communication.

29.     Therefore, the computers of Instagram are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

30.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

31.    Based on the forgoing, I request that the Court issue the proposed search warrant.

32.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

33.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

34.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

TED D. WENDLING
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Sworn to before me this
1st day of February 2019

/s/ VMS

THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Instagram account associated with username "slyfoxry," that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC ("Instagram"), a social networking company owned by Facebook, Inc. and headquartered in San Francisco, California.

2

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Instagram**

To the extent that the information described in Attachment A is within the possession, custody,

or control of Instagram, LLC ("Instagram"), including any messages, records, files, logs, or

information that have been deleted but are still available to Instagram, or have been preserved

pursuant to a request made under 18 U.S.C. § 2703(f), Instagram is required to disclose the

following information to the government for each user ID listed in Attachment A from April

2017 to the present:

(a)    All communications or other messages sent or received by the user of the
account using the Instagram Direct feature or any other feature that allows the
user to send and receive private messages;

(b)    All contact and personal identifying information, including full name, user
identification number, birth date, gender, contact e-mail addresses, Instagram
passwords, Instagram security questions and answers, physical address (including
city, state, and zip code), telephone numbers, screen names, websites, and other
personal identifiers.

(c)    All activity logs for the account and all other documents showing the user's posts
and other Instagram activities;

(d)    All photos and videos uploaded by that user ID and all photos and videos
uploaded by any user that have that user tagged in them;

(e)    All profile information; links to videos, photographs, articles, and other items,
and information about the users' access and use of Instagram applications;

(f)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the accounts; all device identifier logs, including all records of the device identifiers that logger into the accounts;

(i)     All records of the accounts' usage of the "Life" feature, including all photos that the users have "liked";

(j)     All records of searches performed by the accounts;

(k)     The types of service utilized by the users;

(l)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(m)     All privacy settings and other account settings, including privacy settings for individual Instagram posts and activities, and all records showing which Instagram users have been blocked by the account;

(n)     All records pertaining to communications between Instagram and any person regarding the user or the user's Instagram account, including contacts with support services and records of actions taken.

(o)     All records of Instagram accounts used to log into the users' Instagram accounts, including the Instagram identification numbers of those accounts and

2

any other related Instagram information associated with the users' Instagram accounts.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 922(a)(1)(A), among other possible violations of law, involving an individual believed to be RYSEAN BROWN (the "SUBJECT INDIVIDUAL"), including, for the user ID identified on Attachment A, information pertaining to the following matters:

(a) Associations and communications with and between the SUBJECT INDIVIDUAL and others involved in the acquisition, purchase and sale of firearms as described in the affidavit;

(b) Comments, communications, photographs and images about any activity designed to enrich the SUBJECT INDIVIDUAL, through the SUBJECT OFFENSE;

(c) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and the racketeering enterprise and to the Instagram account owner(s);

(d) Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

3

(f) The identity of the person(s) who communicated with the user IDs about matters specified in provisions (a) through (c) above, including records that help reveal their whereabouts.

(g) All records of Instagram accounts used to log into the users' Instagram accounts, including the Instagram identification numbers of those accounts and any other related Instagram information associated with the users' Instagram accounts.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
## RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct.  I am employed by Facebook, and my official

title is _____.  I am a custodian of records for Facebook.  I state

that each of the records attached hereto is the original record or a true duplicate of the original

record in the custody of Facebook, and that I am the custodian of the attached records consisting

of _____ (pages/CDs/kilobytes).  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth, by, or from information transmitted by, a person with knowledge of those

matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity

of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

_____          _____
Date                                                              Signature